**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JONES LANG LASALLE AMERICAS, INC. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO.  23-4100 |
| | : | |
| PAIGE JAFFE, SQUARE RETAIL CONSULTANTS LLC | : | |
| | : | |


**<u>MEMORANDUM</u>**

**MURPHY, J.**                                                                     **July 22, 2024**

      This case is about a bitter business divorce, with claims and counterclaims ranging from breach of contract to misappropriation of trade secrets to Title VII discrimination.  The main defendant, Ms. Jaffe, is a former business associate of plaintiff's.  She demanded a jury trial for all the claims and counterclaims.  But the plaintiff points to a jury waiver provision in one of several agreements between plaintiff and defendant.  Although this case is still in discovery, plaintiff moved to strike the jury demand, and we don't mind resolving the dispute now.

      There is no concern about whether the jury waiver was knowing and voluntary.  Rather, the question is the reach of the jury waiver — does it encompass all the claims and counterclaims or just some?  We answer this question on a claim-by-claim basis by focusing on the connections between the agreements at issue and the relevance of the agreements to the various claims.  And at all times we keep the burden on the movant to show a clear waiver of the claim at issue, because we generally presume against a waiver of the important right to a jury trial.  We grant JLL's motion in part and deny it in part as explained below and summarized in the conclusion.

I.       **Factual allegations**

JLL is a commercial real estate company that offers various services including commercial, retail, and industrial real estate brokerage and property management services.  DI 33 at 3.  In February 2019, JLL's Philadelphia office hired Ms. Jaffe as the managing director of retail leasing.  *Id.* at 4.  At that time, Ms. Jaffe signed a promissory note for a $650,000 up-front loan from JLL.  *Id.* at 5.  The promissory note states that the loan is to be forgiven at a rate of six percent per dollar of cash collected and attributed to her from 2019 through 2026.  *Id.*  According to the terms of the promissory note, Ms. Jaffe was required to repay any unforgiven portion of the loan by December 31, 2026.  DI 16 at 17.  Later, Ms. Jaffe was reclassified as an independent contractor; she signed an independent contractor agreement (ICA) and the note was amended to reflect the new agreement.[1]  *Id.*  The ICA included the following jury waiver provision:

> "The parties knowingly and willingly waive a trial by jury in any dispute arising out of or in any way related to this Agreement."

DI 33-2 at 6.  Further, the ICA outlined several terms for Ms. Jaffe and JLL's client-contractor relationship, including a confidentiality provision, a requirement to return documents and property, and a non-solicitation provision.  The ICA also contained an integration clause stating that the ICA — along with Exhibit A — embodies the entire agreement.  Exhibit A in turn outlines Ms. Jaffe's compensation and references the $650,000 loan subject to the terms of the promissory note.

After Ms. Jaffe began work at JLL, accounts of the relationship differ dramatically.  JLL alleges that Ms. Jaffe failed to meet her performance metrics, formed her own business, Square, to compete with JLL, and stole confidential information.  Ms. Jaffe tells a very different story

---

[1] Neither party argues that this reclassification is relevant in analyzing the present motion.

where JLL undercut her commissions, discriminated against her because of her sex, and made

working conditions intolerable.  The result is this litigation and the following claims and

counterclaims:

- Count I: Breach of Contract (ICA)
- Count II: Breach of Contract (Promissory Note)
- Count III: Breach of Duty of Loyalty
- Count IV: Unjust Enrichment
- Count V: Unfair Competition
- Count VI: Conversion
- Count VII: Tortious Interference (against Square)
- Count VIII: DTSA (Defend Trade Secrets Act)
- Count IX: PUTSA (Pennsylvania Uniform Trade Secrets Act)
- Count X: Civil Conspiracy
- Counterclaim One: Sex Discrimination under Title VII
- Counterclaim Two: Retaliation under Title VII
- Counterclaim Three – Six: Sex Discrimination and Retaliation under the PHRA and PFPO
- Counterclaim Seven: Forgiveness of Note
- Counterclaim Eight: Judgement related to Sales Commission
- Counterclaim Nine: Breach of Contract relating to Note
- Counterclaim Ten: Conversion

## II.     Motion to strike defendant's jury demand[2]

JLL initiated this lawsuit in October 2023 and, in June 2024, filed an amended complaint

adding a claim of breach of duty of loyalty.  *See* DI 1; DI 33.  Ms. Jaffe filed her answer and

counterclaims, demanding a jury trial on all claims and counterclaims.  DI 16; DI 38 (amended

answer incorporating counterclaims).  JLL filed a motion to strike the jury demand arguing that

Ms. Jaffe waived her jury rights by signing the ICA agreement.  DI 24.  Both parties agree that

---

[2] We appreciate that discovery pertaining to the underlying claims is ongoing.  This type of motion could be decided closer to trial, but for the most part it appears ripe.  In particular, at oral argument, the parties generally agreed that it would be premature for this court to express any opinion on Count X, Civil Conspiracy.  So we will not.  Similarly, if evidence is obtained during discovery that ought to change the outcome of this decision, either party may file a renewed motion no later than 14 days following the close of discovery.

Ms. Jaffe knowingly and voluntarily assented to the waiver.  *See* DI 25 at 5.  The dispute is the

scope of the waiver — does it encompass all of JLL's claims and Ms. Jaffe's counterclaims too?[3]

### A.  The claims arising from the promissory note (claims II and IV; counterclaims seven and nine)

JLL advances two reasons why the note-related claims are covered by the waiver

provision in the ICA agreement.  First, JLL argues that the note expressly incorporates the

conditions of the ICA agreement — including the waiver provision.  DI 26 at 3.  Second, JLL

argues that even if the jury waiver is not expressly incorporated, the ICA's waiver language

covers disputes "in any way related to" the ICA, and the note is sufficiently related to the ICA to

be encompassed by that language.  DI 37 at 2.

Ms. Jaffe responds that only the "conditions," not the "terms," of the ICA are

incorporated into the note, and that the jury waiver is a "term."  DI 36 at 2.  Additionally, Ms.

Jaffe argues the waiver's language is limited to claims related solely to the ICA agreement and

does not, as JLL argues, encompass claims arising from the note — a separate agreement related

to, but one step removed from, the ICA.  *See* DI 25 at 6-7.

### B.  JLL's tortious interference claim against Square (claim VII)

The corporate entity Square was not party to the ICA.  Nevertheless, JLL argues that

under traditional agency principles, Jaffe was an agent of Square and thus her agreement may be

imputed to Square.  DI 24 at 11.  Ms. Jaffe argues that Square was formed some three years after

---

[3] Ms. Jaffe concedes that Counts I, III, IV (to the extent that the claim for unjust enrichment concerns the benefits acquired under the ICA not under the note), VI, and Counterclaims Eight and Ten are covered by the waiver.  DI 25 at 5; DI 36 at 1.

Ms. Jaffe signed the ICA, and even if agency were established, it would be improper to impute a jury waiver provision to a non-signatory.  DI 25 at 12.

### C.  JLL's unfair competition and trade secrets claims (claims V, VIII, and IX)

In essence, JLL argues that its unfair competition, DTSA, and PUTSA claims "relate to" the ICA because they are based in part on the terms of the agreement.  *See* DI 24 at 9; DI 26 at 8. For her part, Ms. Jaffe argues that the trade secrets claims rely on a duty not to tortiously misappropriate trade secrets that is independent of the ICA.  DI 26 at 11.  At oral argument, Ms. Jaffe expanded on this, arguing that while there may be overlap, these claims involve an evidentiary showing beyond mere reference to the terms of the ICA.  *See* DI 41 at 42:6-9.

### D.  Ms. Jaffe's employment discrimination counterclaims (counterclaims one-six)

JLL argues that the jury waiver provision should be read broadly to include all claims arising not merely out of the terms of the ICA, but the contractual relationship established by the agreement.  DI 26 at 5-7.  Ms. Jaffe argues that the scope of the waiver provision should be limited to the actual terms of the ICA, not the contractual relationship at large.  DI 36 at 6.

### III.   Analysis

The right to a jury trial in a civil case is a fundamental right expressly protected by the Seventh Amendment to the United States Constitution, though a private litigant may waive this right.  *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007).  The waiver of a constitutional right, including the Seventh Amendment right to a jury trial, is a federal question controlled by federal law even if the claim arose under state law.  *In Re Phila. Litig.*, 158 F.3d 723, 726 (3d Cir. 1998).  Because the right to a jury trial is fundamental, courts must "indulge every reasonable presumption against waiver."  *Brown & Brown, Inc. v. Cola,* No. 10-3898, 2011 WL 4380445, at *4 (E.D. Pa. Sept. 20, 2011) (quoting *Henricks Com. Park. LLC*

*v. Main Steel Polishing Co.,* No. 09-23, 2009 WL 2524348, at *3 (W.D. Pa. Aug. 18, 2009)).

While this presumption against waiving one's Seventh Amendment rights is most often applied

when determining whether a waiver was knowing and voluntary, we think the presumption

applies with no less force when analyzing the scope of waiver language.  *See Selzer v. Dunkin'*

*Donuts, Inc.*, No. 09-5484, 2014 WL 1340549, at *2 (E.D. Pa. Apr. 4, 2014) ("[A]s the right of

jury trial is fundamental, courts indulge every reasonable presumption against waiver." (quoting

*Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937))).  In other words, our general approach

here will be to look to JLL's arguments to see if they persuade us that the waiver provision

clearly applies to each claim.

### A.  The claims arising from the promissory note will go to a jury.

We will begin by tackling two of JLL's arguments to assess whether the claims arising

from the promissory note are subject to the jury waiver provision in the ICA: first, whether the

jury waiver provision is incorporated into the note; and second, whether the two documents are

sufficiently related for the waiver provision to extend to the note.  Neither argument is

persuasive.

JLL contends that the language "Holder agrees to make a cash loan to Maker subject to

the ***conditions*** of this Note and those contained in the [ICA[4]]" incorporates the jury waiver

provision.  DI 26 at 3 (emphasis added).  The parties debate whether the referenced "conditions"

include all the ICA's "terms," but at a minimum, it would be inconsistent for the note to

incorporate ***all*** the terms of the ICA — for example, the ICA and note contain separate choice of

law provisions. *Compare* DI 33-2 at 6, *with* DI 33-3 at 2.

---

[4] The original language is "Agreement."  Both parties agree that this is referring to the
ICA.

Further, the note is explicit when incorporating terms of the ICA in other sections, suggesting that the parties' background presumption was against incorporation.  For example, under the "Repayment" section, it specifies what happens if Ms. Jaffe is terminated, clarifying that those words should be understood "as those terms are defined in the Agreement."  DI 33-3 at 2.  No such clarifying language explicitly incorporating the ICA's jury waiver appears in the note.  Bearing in mind the presumption against waiver and the ambiguous nature of the incorporation provision, we conclude the waiver provision was not incorporated into the note.

JLL also contends that the ICA's waiver provision covers claims arising from the note because the two documents are highly interrelated.  DI 37 at 2.  But consistent with the presumption against waiver, courts are reluctant to extend a jury waiver provision from one agreement to another, even when the agreements must be read together.  *See Partners Coffee Co. v. Oceana Servs. & Prods. Co.,* No. 09-236, 2009 WL 4572911, at *14 (W.D. Pa. Dec. 4, 2009); *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 437-38 (3d Cir. 1993).  In *Partners Coffee,* the court held that a jury waiver in one contract did not extend to a second agreement even though the second agreement was a condition precedent to the contract containing the waiver.  *See Partners Coffee Co.,* 2009 WL 4572911, at *15.  The court in *Partners Coffee* noted that the waiver's language was limited to "any litigation arising out of, under or in connection with *this* Agreement" with the language "this agreement" suggesting the waiver did not extend to a separate, albeit related, contract.  *Id.* at *14.  We agree with that approach.

Hence, although the note is referenced by the ICA, Jaffe persuasively argues that the two are independent agreements meant to be considered separately.  JLL concedes as much by filing separate breach of contract claims for breach of the ICA (Claim I) and for breach of the note

(Claim III).  Indeed, the ICA and the note were executed a year apart and are governed by laws of different states — Illinois for the note and Pennsylvania for the ICA.  DI 25 at 6.

*Cottman Transmission Systems*, relied upon by JLL, is inapposite.  *See* DI 24 at 6.  First, *Cottman* does not explore the scope of the waiver, only its validity.  *See Cottman Transmission Sys. v. McEneany*, No. 05-6768, 2007 WL 119956, at *3 (E.D. Pa. Jan. 4, 2007).  Second, the waiver in *Cottman* was broad, covering "any action, proceeding or counterclaim, whether at law or in equity, brought by either of them*, or in any matter whatsoever which arises out of or is connected in any way with this agreement *or its performance*.*"  *Id.* at *1-2 (emphasis added).  The *Cottman* waiver broadly extended to claims arising from the performance of the agreement, including the promissory note which served as consideration, rather than being limited to "this agreement" alone.  *See Partners Coffee Co.,* 2009 WL 4572911, at *14.  Absent clear language and considering the presumption against waiver, we are reluctant to extend a jury waiver provision to a separate document that could have easily included its own waiver provision. Because the waiver is neither incorporated into the note nor is the note encompassed by the waiver, Counts II, IV (as the claim relates to unjust enrichment arising under the terms of the Note),[5] and Counterclaims Seven and Nine will go to a jury.

### B.  The tortious interference claim will go to a jury because Square was not a party to the ICA.

JLL argues that, under agency principles, the ICA agreement should apply to the corporate entity Square.  But JLL does not provide a persuasive explanation for how Ms. Jaffe could have

---

[5] JLL's unjust enrichment claim relates to the note only in allegations of nonpayment of the loan amount. *See* DI 33 ¶¶ 74(b); 75.  The remainder of Claim IV will go to a jury.

signed away the rights of a corporation that would not be created until three years after Ms. Jaffe signed the ICA.  DI 24 at 11.

JLL relies on *In re DaimlerChrysler,* which held that a non-signatory employee could be bound by a jury waiver provision signed by their employer.  *See In re DaimlerChrysler AG Secs. Litig.*, No. 00-993, 2003 WL 22769051, at *3 (D. Del. Nov. 19, 2003).  But *Daimler Chrysler* involved employees seeking to **enforce** a jury waiver provision against themselves whereas here Square seeks to **avoid** waiver.  *See Tracinda Corp.*, 502 F.3d at 224 (upholding the application of a jury waiver to a non-signatory on narrow grounds — limited to allowing an agent *to invok*e a jury waiver provision and not holding an agent to a jury waiver provision they were *trying to avoid*); *see also Selzer*, 2014 WL 1340549, at *3 (refusing to hold a corporate plaintiff to a jury waiver and noting that *Tracinda* explicitly limited its holding to willing participants).[6]

Critically, the cases cited by JLL require that Ms. Jaffe and Square maintained an agency relationship at the time the ICA was signed, and JLL fails to demonstrate that any such relationship existed.  *See* DI 24-2 at 11-12.  JLL, relying on the imputation doctrine, argues that an agency relationship existed when Ms. Jaffe signed the ICA because her actions benefited Square.  *See* DI 24-2 at 15.  But JLL cannot persuasively explain how Ms. Jaffe was acting as Square's agent before the company existed, or how her execution of a private contractor agreement was acting "within the scope of [Square's] authority."  *See Belmont v. MB Inv.*

---

[6] *See also FinancialApps, LLC v. Envestnet, Inc.*, No. 19-1337, 2021 WL 131458, at *4 (D. Del. Jan. 14, 2021) ("I read Tracinda to stand for the narrow proposition that a corporation's contractual jury trial waiver provision applies to nonsignatory directors and officers **seeking to invoke** the waiver as agents of the corporation."*)* (emphasis added); *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704, 2022 WL 3017364, at *8 ("Our Court of Appeals in *Tracinda Corp.* expressly found the distinction between invoking and evading a jury waiver is not a 'distinction without a difference.'").

*Partners, Inc.*, 708 F.3d 470, 494-95 (3d Cir. 2013) (quoting *Off. Comm. of Unsecured Creditors of Allegheny Health Educ. & Rsch. Found. v. PriceWaterhouseCoopers, LLP*, 989 A.2d 313, 333 (Pa. 2010)).  Because we decline to extend the jury waiver to unwilling non-signatory Square, JLL's tortious interference claim against Square, Claim VII, will go to a jury.

**C.  JLL's unfair competition and trade secrets claims rely on the terms of the ICA and are covered by the waiver.**

Often, when a claim requires a party to use a provision in an agreement to prove the claim, it "relates to" the agreement for jury waiver purposes.  *See Allscripts Healthcare*, 2022 WL 3017364, at *17; *Coface Collections N. Am., Inc. v. Newton*, No. 11-00052, 2012 WL 3782432, at *2-3 (D. Del. Aug. 31, 2012).  *Allscripts* held that because the DTSA requires that the party seeking to enforce a claim must show that there were reasonable steps to keep information secret, the DTSA claim "related to" the agreement because of the agreement's non-disclosure requirements.  *See Allscripts Healthcare*, 2022 WL 3017364, at *17.  *Coface* held that the Delaware Trade Secrets Act was covered by a jury waiver because the agreement's confidentiality provision was necessarily implicated to prove the claim.  *See Coface Collections N. Am.*, 2012 WL 3782432, at *2-3.

Here, the ICA includes a confidentiality section that obligates Ms. Jaffe to keep trade secrets and proprietary information confidential.  As in *Allscripts* and *Coface*, JLL's PUTSA and DTSA claims will require that JLL prove it took reasonable efforts to keep the relevant information secret.  That, in turn, implicates the ICA.  Because JLL's trade secret claims rely in part on the "Confidentiality" provision of the ICA, they relate to the agreement and are covered by the waiver.  Thus, the right to try counts VIII and IX to a jury is waived.

Furthermore, JLL's unfair competition claim is based on alleged conduct prohibited by the terms of the ICA and relates to the agreement.  When an unfair competition claim arises from

conduct that violates the terms of an agreement, a jury waiver in that agreement covers the claim. *See Coface Collections N. Am.,* 2012 WL 3782432 at *1-2 (D. Del Aug. 31, 2012) (holding that a jury waiver covered an unfair competition claim because the non-solicitation section of the agreement proved necessary for showing a reasonable business expectancy under Delaware common law); *see also DTN, LLC v. Pioneer Hi-Bred Int'l, Inc.*, No. 18-384, 2018 WL 5961083, at *1 (holding that an unfair competition claim based on factual allegations related to stealing from a customer base arose from the contract which governed the individual's relationship with said customer base).

JLL's unfair competition claim is based on allegations that Ms. Jaffe built Square "from the documents and other materials that belong [to] JLL and that [they] are not authorized to use on their own behalf or that of any third party."  DI 33 at 16.  JLL's claim is therefore based in part on the "Return of Documents and Property" section of the ICA outlining Ms. Jaffe's responsibility for returning confidential documents at the end of their employment.  DI 33-2 at 6. In essence, JLL's unfair competition claim focuses on alleged actions Ms. Jaffe took in violation of the ICA agreement.  Therefore, JLL's unfair competition claim, Count V, relates to the ICA and is covered by the jury waiver.

**D.  The ICA's waiver is not broad enough to encompass Ms. Jaffe's employment discrimination counterclaims.**

Ms. Jaffe's employment discrimination claims, unlike JLL's trade secret claims, do not rely on specific terms of the ICA, and JLL fails to demonstrate that the waiver stretches so far to cover claims arising in any way from the working relationship.  JLL, apart from citing *Brown v. Cushman & Wakefield*, relies exclusively on cases involving arbitration agreements.  *See* DI 37 at 4-5.  While arbitration provisions and jury waivers both involve the loss of the right to a jury trial, they involve opposite presumptions.  As discussed, we generally presume against waiver of

jury trials, but courts must construe arbitration agreements in light of the Federal Arbitration Act (FAA) policy that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration . . . ."[7]

For that reason, we decline to follow *Brown v. Cushman & Wakefield*, which relied almost exclusively on arbitration cases to hold that a jury waiver provision encompassed Title VII claims. *See Brown v. Cushman & Wakefield*, 235 F. Supp. 2d 291, 294 (S.D.N.Y 2002). The Third Circuit has cautioned against analogizing arbitration waiver provisions to jury waivers, given that the former comes with the weight of the FAA presumption. *See Tracinda*, 502 F.3d at 223; *see also Quinn Constr., Inc. v. Skanska USA Bldg., Inc*., No. 07-406, 2010 WL 4909587, at *7 (E.D. Pa. Nov. 30, 2010) ("Where a principle drawn from an arbitration case may have been the result of the underlying presumption in favor of enforcing arbitration clauses, it may not be appropriate to analogize the case to jury waivers.").

*Allscripts* also endorses a narrower interpretation of jury waiver language. *See Allscripts Healthcare*, 2022 WL 3017364, at *18. In *Allscripts,* the court analyzed similar "related to this agreement" language in a jury waiver and found that it did not encompass a claim of breach of the duty of loyalty, even though the duty of loyalty derived from the individual's employment and the agreement established their employment. *Id.* The court reasoned that it "need not know how [he] became an Allscripts employee to determine whether [he] owed a fiduciary duty to Allscripts and whether he breached it." *Id.* Here, the specifics of the ICA agreement are not essential to consider Ms. Jaffe's Title VII claims, nor are we persuaded that the language of the jury waiver provision is broad enough to encompass all claims arising from JLL and Ms. Jaffe's

---

[7] *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1114-15 (3d Cir. 1993).

client-contractor relationship.  Ms. Jaffe's discrimination counterclaims (one through six) will go to a jury.

## IV.    Conclusion

Below we summarize our conclusions:

Counts I, III, IV (except as alleged in ¶¶ 74(b), 75), VI; counterclaims Eight and Ten – Ms. Jaffe concedes are covered by the jury waiver.

Counts II, IV (¶¶ 74(b), 75); counterclaims Seven and Nine – We deny JLL's motion to strike. These claims arise from the promissory note and not the ICA.

Count VII – We deny JLL's motion to strike. Square did not waive its jury rights.

Count V, VIII and IX – We grant JLL's motion to strike the jury demand for the trade secrets and unfair competition claims.

Counterclaims One-Six – We deny JLL's motion to strike Ms. Jaffe's jury demand for her discrimination counterclaims.

Because Ms. Jaffe waived her right to demand a jury trial for some, but not all, of the claims and counterclaims in this case, when trial approaches in this matter, counsel should carefully consider the best way to try the case.  Presumably, but not necessarily, it will be more efficient to try the entire case to a jury even if some of the issues would be on an advisory basis.